The next case on the calendar is Brow v. CTC Corporation. Thank you, your honors. May it please the court. My name is John Stasny. I represent the six appellants in this case who were the plaintiffs in the trial court below and who are participants and beneficiaries in a deferred compensation plan governed by ERISA. And the district court below in this case correctly found that a fiduciary of the ERISA deferred compensation plan had violated his fiduciary duties by taking plant assets. And where the court erred is that it failed to provide a remedy that fully required that and restore the plan and its participants and beneficiaries to the position they would be in if he hadn't taken the assets. Can I just ask, as I understand the record, you argued below that the defendants breached their fiduciary duties by withholding the plant assets, failing to as I look at the record, the court granted judgment in the plaintiff's favor on each of these theories, but without any explanation as to why. In fact, the court sort of said late in a portion of the ruling, plaintiffs failed to identify these breaches with any specificity in their presentation of evidence. So you started by identifying the breach, but I was having difficulty identifying specifically what the district court found as to how the fiduciary duty was breached. So what am I missing? Where should I look for that? So I think it is clear in the evidence and has to be combined with the arguments made to the trial court. And the reason it may be a little bit difficult to identify is because those three ways that the defendants breached their fiduciary duties, they all overlap. By trying to maintain this plan as a top hat plan, which would allow them to hold the plans assets. And it would, if it had been a valid top hat plan, then they would have been able to hold the assets as an asset of the company. And that's how top hat plans are held. So that's basically maintaining it as an illegal plan. So in doing so, they withheld the assets from the plan. They kept them as an asset of the corporation and eventually transferred those assets to a company called Mission Management and Trust, where they were actually commingled with the personal assets of defendant Bruce Laumeister. And so that overlaps, like I say, with their maintenance of an illegal plan by trying to maintain it as a top hat plan. And then the taking of assets overlaps with that because they used those assets to spend on CTC corporations operations. They took those assets, diverted them into the company. Mr. Laumeister specifically, he had total control over the mission management accounts, which were consolidated with his personal account for investment purposes. He had total authority without anyone say so, without anyone else's help to take those assets, divert them into the company. All of those things. Excuse me, Judge Lynch, you're muted, I believe. Yeah, sorry. Basically, Mr. Stasny, you're saying he took the money. I'm a little puzzled by the argument about he tried to maintain it as a top hat. In good faith or mistake that if he thought it was a top hat plan, I don't know if that would be a defense. But if someone thinks or acts as if it's a top hat plan, when it isn't technically that, and I don't mean to denigrate the point by saying technically, it isn't that under the law, that in itself is a breach from day one. Absolutely. And I think that your point goes to the reason that the trial court took so many steps in its remedy to limit how much he had to I think there was this sense that somehow that's inequitable, but the fact is it's not. None of what plaintiffs are asking for, none of the relief that's part of that remedial statute is really punitive in nature. It's not to punish him. The court did find or seemed to find that he had this idea that it was a top hat plan. But a blown top hat election is kind of the term that I think it's very similar maybe to some blown tax elections. They can have catastrophic consequences. They cause these losses. The question now is simply who bears the loss because somebody has to bear it. One of the grounds for the measure of damages point that you're focusing on, there was this issue whether or not the district court incorrectly took into account good faith or no good faith, but there were four reasons given. And one of the reasons was that the district court said that it could not determine the probable amounts of contributions and withdrawals that would have gone into and out of the plan and whether those amounts would have increased or decreased the plan's balance beyond 2004. So why was that particular finding erroneous? Well, I think it's because our request for the remedy and the amount that we're asking this court to fix in place of what the district court awarded assumes zero contributions. It assumes zero contributions. And if the defendant wanted the benefit of withdrawals, it would be the defendant's burden under Donovan v. Beerwith to show what those withdrawals are because any doubt has to be construed against the breaching fiduciary. And I'll use this as I'll succumb to my temptation to quote the 1722 case of the chimney sweeps jewel, which is I think it's Armory v. Delamere. A chimney sweep finds a jewel, takes it to a goldsmith to assess its value. The jewel is pilfered by the apprentice of the goldsmith. And so the goldsmith is liable. Since the goldsmith can't produce the jewel, the jury has to assume that the jewel was the finest quality of jewel it could have been and award damages on that maximum basis, not because the goldsmith was it acted in bad faith, but because the doubt has to be construed against the breaching. Bailey, I guess in that case, but courts have actually cited that chimney sweep case to construe doubts against the breaching tortfeasor. And so that's why the withdrawals don't come into play. We're not asking the court to assume any contributions, though, in the amount of the damages awarded back to the plan. Aren't you just asking for the interest or the income that would have happened on the money had it been left in the fund? That's correct. We're asking for what the investment gains would have been. And the court accepted plaintiff's expert analysis and calculation of what those gains would have been had it been prudently managed. And actually, the defendant's expert, who was a calculation, at least was correct. And it was we don't have to we don't have to address the question of contributions because you're not asking for that in the district court. Didn't award that. That's correct. And frankly, I think it would be impossible given the destruction of evidence and the destruction. Well, yes. And given the withdrawal front, that's something on which clearly the other side would have the burden of showing withdrawal, which they can't and really don't even say they have. Absolutely. Absolutely. And I will say this. We've we've suggested in our brief that the court, the court below does have some authority on remand to enter some orders for the administration of some of the proceeds of this fund. And the court may have some discretion there for other participants who have been paid when they submit claims, just as would happen with any sort of common fund administration. If there if there are claimants who say, yes, I've already been paid X number of dollars, I think the court may have some discretion there. But that's not an issue for any of us. I was wondering about that because it appears to be that the the court ordered that the plan benefits be awarded to each of the 18 plan participants. The evidence has seemed to establish a maximum of 15 plan participants and five of those had already received benefits. So you're saying that the district court can fix that as people make applications? I do believe that. I think the court has plaintiff's exhibit three that it did say was reliable for the purpose, not for all purposes, but at least for the purposes of reflecting account balances. As of 1997, the plaintiff's expert shows how those balances would have grown to today. And then for individual claimants. And again, we're not talking about plaintiffs because they all testified. It wasn't disputed that none of them have received any benefits. But for other claimants, yes, I think the court does have the discretion to prescribe sort of a claims process in which people could disclose whether they had received any benefits or not previously. Can I ask one question on a different point? The court apportioned liability between the defendant and your client, Ms. Launderville, right? Yes. And I was wondering about the counter claim in this case. Because and I'm sorry, I haven't gone back and looked at the answer and the counter claim actually says, because I was puzzling over this still as late as last night, and I didn't get the chance to do that. Is the counter claim that was made purely a claim for contribution? Or was it a claim made by the defendant in his capacity as a fiduciary on behalf of the plan? It's number one, it was purely a claim for contribution and indemnity. That's exactly how it was pled. That's exactly how it was argued. So if that is the case, if that is the case, is it your argument or a part of your argument that to whatever extent Ms. Launderville is liable, and I understand you're contending that she isn't or shouldn't be found to be liable, she would be liable in effect as a what would in other circumstances be a third defendant. The original defendant is responsible jointly and severally with anybody else who's responsible. And the plaintiffs if they choose and if they're able could collect the judgment entirely against him. And to whatever extent the district court was correct, and I understand you say that this court wasn't correct, to whatever extent the district court was correct, that she should share in the liability. It's on the defendant to come after her for the whatever amount she would owe him in contribution. But at this stage, it's error to a portion between the two because the defendant is at a minimum jointly and severally liable and the plaintiffs, if the plaintiffs can and want to collect against him, they can do that. That's exactly right, that is our argument. And that is what the line of cases ever since Shem on Canal by this court have described, is a joint and several liability scheme in which two fiduciaries could potentially seek contribution from each other. But it is the plaintiffs who can file their case against either one of those fiduciaries that they consider liable. It would also, would it not have been open to the defendant? I'm sorry, I'm blanking on his name. It also begins with an L. Loughmeister. Mr. Loughmeister. It would also have been open to Mr. Loughmeister, wouldn't it, to have pursued a claim against one of the plaintiffs if such a claim was sustainable for payment to the fund because he has standing to do that as a fiduciary, even one who was faithless in some respect. I think that he could absolutely assert that claim. The standing is there. So you are correct, at least in terms of standing. I, of course, think that there would be a separate point. That is correct. He only asserted a claim for contribution and indemnity. Could you address the district court statute of limitations analysis? I mean, it seems to me that there's evidence in the record that maybe most or at least many of the plaintiffs had actual knowledge of the thing that you're identifying as the principal breach here at much earlier than 2000. I can't remember if it was 2014 or 15, but the district court thought that didn't matter because the statute of limitations would run from when the plaintiffs discovered that these actions constituted an illicit violation. And that doesn't seem to me to be the law. So it's difficult to perform a statute of limitations analysis here because we don't know what breach we're talking about with regard to each. Could you just address that? Yeah. First of all, I will say that the plaintiffs for their claim on behalf of the plan and for recovery of the plan to succeed, it only takes one plaintiff because every single one of these plaintiffs has an independent right of action on behalf of the plan to seek recovery for the whole plan. And so you'll notice in the brief of the appellees here, they don't even claim, they don't even argue that I think three of the plaintiffs or four of the plaintiffs, I guess, Mr. Jordan, Mr. Burgess, Ms. Jameson, and the estate of Beverly Burgess, that any of them had actual knowledge outside the limitations period. And so like we've already done a brief, I think it's largely an academic point because as long as one of them has a timely claim or recovery from the for the whole plan is available. But to the extent that the actual knowledge standard needs to be considered, it is a somewhat unique feature of ERISA cases and we've cited some authority for this in the brief that knowledge that somebody is just taking money from the plan really isn't always enough because this case is a great example because the breaching fiduciary has asserted over and over again that there was no breach, that this was a top hat plan. And somebody who doesn't know whether it's a top hat plan or not really doesn't have enough knowledge to understand that there's been a breach. And in ERISA cases, there does have to be knowledge that the conduct was a breach of a fiduciary duty and not just the fact of moving funds around. You could ask one other thing about the remedy that has puzzled me here. Let's assume that we agree with you about practically everything and were to order Mr. Laumeister to return 100% of all the money you want to the fund. Now the money sits in a fund. Now this all makes great sense if we're talking about the General Motors retirement plan. The company goes on, more people are going to retire all the time, the fund needs that money to pay all kinds of claims and it doesn't matter whether the individual plaintiffs in the case who seek that remedy get anything out of it or not personally. They're entitled to argue the fund should get the money, the fund gets the money, maybe somebody else gets the benefit. Here though, it's a rather small number of people who are involved. The court found that some of them actually aren't entitled to any benefits at all. What happens if at the end of the day, nobody's entitled to any more money or only a few people are entitled to benefits and there's still money left in the fund? What happens to that money? That's a good question. I have to say that for the plaintiffs, I'll insist that all the facts were shown at trial to show they are absolutely entitled to their shares and we've made that argument. Some people at least will be entitled but I'll take the plan participant named Wayne Massari for example, his name comes up in the record. There was at least some argument that he may have been paid everything that he was due. If that's true and that reduces what ultimately has to be paid out, then in theory, then yes, I think some of this money could wind up going back to the company. I think that's at least possible but again, I think that has to be part of the claims process and I think at this juncture, again, the burden is on the defendants to show why there should be any reduction in the amount they need to repay. The per capita issue, do you understand that what the district court ordered was that it was per capita to anyone who had a claim but not to people who didn't have claims or it's per capita to all the participants? I understand it as being per capita to everyone who signs and mails in the affidavit that attests to the four elements prescribed by the district court's order for employment, age, participation and I think one more. So anybody who gets the notice, mails in that affidavit, gets an equal share with everybody else. That does not restore the participants to the rights they would have had but for the breach. They had accrued account balances. Well, it depends who they are, right? Some people might get more money and some people might get less than the per capita share. I mean, it may not be the right and this doesn't make it the right answer. I'm just saying that it might be that some of your clients will be disadvantaged by the argument that you're making. That's exactly right. It would basically create a distribution that just doesn't bear the relation to what the different people's vested rights were because they weren't all equal. We'll hear from your adversary. You've reserved some rebuttal time. Thank you. Good morning, your honors. I start my analysis from a different place than Mr. Stassney does. I look at the fact that as he conceded the plan itself was found by the trial court to be defective ab initio when it first was presented because of what the trial court found as the absence of the subjective factors. The plan was not a top hat plan. No action was brought to enforce that ruling or to enforce the deficiencies in the plan until 2015, nearly 20 years after the employee. Actually, if we go back to the original 1990 plan, it was pretty close to 30 years after. I think for purposes of this case, we need only look at the 1997 plan. There are two components of the statute of limitations for fiduciary violations in ERISA. The first component is the statute of repose, the six-year statute that says, in fact or in substance, that no claim can be brought on an ERISA fiduciary claim after six years. I'm glad you start with that because I have a question about that. Am I right that that but in the case, in the reply brief? No, your honor, it doesn't. The original claims for statute of limitation, the site to ERISA section 413, both parts. The only part that was argued in detail during the case was the second part, the knowledge piece. But from our perspective, the deficiency for failing to comply with the statute of repose is clear on the face of the findings of the case and all of the evidence of the case. Are you saying that in the answer, in the original answer, the statute of limitations defense cites the entire statute, including both parts? That's correct, your honor. Is there any further reference to the statute of repose part from that time until the reply brief? To my knowledge, we cited to the entire section 413 throughout all of our pleadings. We most vigorously argued the second part. I'm asking you, was there an argument that said to the district judge, by the way, the statute of repose takes out all of these issues about knowledge. So we only have to talk. We shouldn't be talking about that. Here's the section that the statute of repose part, the six-year statute of limitations. We win on that. Was that ever said to the district court? Well, it was said in the sense that we pled the entire statute. It was said in the sense that the entire statute is cited. That's the only sense you're relying on. That may be good enough, but I mean, I'm just trying to find factually, is that the only thing that we can rely on to say that the statute of repose was properly interposed and the district court should have ruled on that? Well, if you look at the record of the case, I don't think there is any dispute on Mr. Stassi's side or my side that the decision of the court was that the plan as presented to the participants was defective in 2000, excuse me, in 1997 because the participants in the plan, according to the court's finding, which we also disagree with, but the participants in the plan were not either highly compensated or management participants or select participants. And on the face of the record, that alone meant that the claims did not satisfy the statute of repose. I don't think we even needed to argue it. It was right there on the face of the record, and there's no dispute as to the dates. We argued the second part because of the subjective nature of notice to the plan participants that's required in order to meet the three-year statute. But you're right, we did not verbalize an argument based on the clear language of the statute when the court rendered its decision. On the second issue, you heard in their briefs and today, they pointed out that plaintiffs Jordan, Beverly Burgess, Tyler Burgess, and Jamison, there's no allegation that they had any knowledge of any breach at an earlier date when the money was moved. Isn't that correct? Well, the record of the case reflects that in 2004, Mr. Lohmeister and Ms. Launderville held a meeting of the employees of CTC Corporation to advise them that the corporation was in serious financial trouble and that the proceeds or that the accounts that the corporation had been maintaining to accumulate funds from which to pay deferred compensation were going to be used to pay the employees' salaries or to cover operating expenses of the company. That, by itself, should have been sufficient notice. The evidence was that Jordan, Burgess, and Jamison were present at that meeting? We don't have evidence of that. All we have evidence of is that the meeting was held with the employees of CTC Corporation and we think it's fair to infer from that that that included all employees, but we don't have any direct evidence. Were there employees at that fund? I believe they all were, Your Honor. I want to go back to your point about whether it was a top hat plan and that these were all highly compensated managerial employees. I mean, weren't some of the employees who were included in the plan machine operators who made like $24,000 a year? I think one of the employees was identified as an hourly worker rather than a salaried worker. All of the other employees, according to the record below, and there's a list of all of the employees in the discussion of how each one was compensated in the record below, all of them, according to the findings, had a position in the company that could be considered to be management level and each of them... There was a guy who operated a machine and it was a person who maintained machines who had specifically, the evidence is specifically that he had no one reporting to him. Well, I think there was one case and possibly a second case in which that was correct, Your Honor, but if you go back to... I mean, I understand that Ms. Launderville had a very high position in the company and with bonuses made a substantial amount of money, but most of the people that we're talking about, I mean, it's the idea that they somehow made a lot of money for a small town in Vermont. Is that the point? I mean, how do we decide who... Isn't it just a fact finding by the district court whether they're highly compensated? And isn't it pretty reasonable to say that somebody who makes $24,000 a year is not highly compensated? If you go back to your decision in Demery, the issue of compensation was discussed in that case and the court found that employees who made twice the average wage of other employees in the company could be considered to be highly compensated. There's nothing in ERISA that suggests that the size of the company dictates the amount of compensation to be paid to its employees or put differently. There's nothing in ERISA that suggests that small companies can't participate even if they're... Again, you said yourself that it could be found. I mean, isn't that right? That this is a question for a district court taking into account the totality of the circumstances, whether these are highly compensated, whether this plan was limited to people who are highly compensated managerial employees. Are you telling me that it was clearly erroneous for the district court to find that not all of these people met that category? Well, if the court found that not all of these people met that category and that several of them or one or two of them didn't meet that category, that also falls within Demery. In Demery, the court said pretty categorically that the fact that one or two participants did not meet the highly compensated standard wouldn't disqualify the plan as a top-half plan. I counted about five or six out of 18 or maybe 15 only that are relevant people here who seemed, at least to me, to be anything but managerial highly compensated employees. Well, I think that that conclusion would run counter to at least as I view ERISA. There's nothing in ERISA that suggests that it discriminates against small companies, even if the wages of those companies are not what you and I might consider to be high compensation. And the management level, we get stuck on titles and presidents and vice presidents. What about the fact that district court found that there was an array of criteria utilized beside their managerial level that the wowmeister decided who would participate based upon a number of other factors? I'd like to clarify that point. It wasn't just wowmeister. This case is focused on wowmeister, but there's no question that the trial court below determined that Launderville, one of the plaintiffs in this case, was equally responsible with wowmeister for management or for administration of the plan. She was a president of the company. She was a director of the company. She attended the meetings. She recommended people for participation in the plan. So when we talk about wowmeister, I think what we need to talk about are the plan administrators. Well, suppose that's right. And Launderville is a breaching fiduciary. Isn't it clear under ERISA that the liability would be joint in several as between the breaching fiduciary? Yes, your honor. So in that case, isn't it necessarily error for the district court to say that Mr. Wowmeister only has to pay 60 percent? He's liable for 100 percent. Maybe she should be liable for 100 percent too. But suppose she's bankrupt. The risk that she's bankrupt has to fall on the other breaching fiduciaries, right? Not on the plaintiffs. The breaching fiduciaries, if they have the money, are all on the hook for all of the losses, aren't they? Well, as I've argued in my briefs, I think it was error for the court to distinguish between wowmeister and Launderville. Yes, but you're defending the idea that it should be even better for wowmeister. He should have to pay only 50 percent. And maybe that would be right on a factual assessment in an action for contribution against Launderville. But in this action, the question is who's responsible as fiduciaries to the fund? And I'm having trouble understanding why Mr. Wowmeister is not jointly and severally liable with anybody else who he or anyone withstanding could pin the losses on. But he's jointly and severally liable. He doesn't get to reduce his obligations to the fund, does he? I agree with that, nor does Ms. Launderville. That's an interesting question. I mean, that depends a little bit on the nature of the counterclaim. If the counterclaim was solely for indemnity and contribution, that's a different thing than if a counterclaim is presented by someone withstanding, who I think it's been conceded that Mr. Wowmeister would have been, with someone withstanding to seek a judgment against her for complete liability as a breaching fiduciary to the fund, not a claim by Mr. Wowmeister to reduce his share of the damages. Well, Mr. Wowmeister, what am I missing? What I think you're missing is the fact that if the court was correct in concluding that this was not a top hat fund, then the liability for any damages to the fund should have been joined in several with Wowmeister and Launderville. If the plaintiffs chose to seek recovery only against Mr. Wowmeister, then Mr. Wowmeister would have had the right to go to bring a claim against Launderville for contribution. And the court at that point could have sorted out the extent to which either one of them or both of them might have been responsible. Let's even say that's correct. Let's say that in this action, everybody's now bound, assuming it was not erroneous, Mr. Stastny says it was erroneous, everybody's bound by the 60-40 split going forward. That's still, no one has adjudicated whether Ms. Launderville has a penny to her name. So I don't see how the judgment here that says the fund only gets 60 percent of what it's owed from Wowmeister, and then it has to chase Ms. Launderville for the other 40 percent, and if she has no money, it's out. I don't think that's the law. I think if she has no money, he's out. I also think that there may, for all I know, there are other people out there who are fiduciaries of the plan. It doesn't seem likely, but theoretically there could have been. That doesn't mean that somehow the court can adjudicate their liability if no one sued them on behalf of the fund for liability. If all that happened was a claim was asserted for contribution, then God bless you, you have that right of contribution, assuming the court correctly adjudicated that claim, and you can get your 40 percent from her. But the fund, any other plaintiff withstanding, still has the right, it seems to me, to get from Wowmeister 100 percent if that's what they want to do. If he's the deep pocket, he's on the hook. Then he can chase the other people. That's my problem with this case, at least in this aspect of the case. I'm not sure you're identifying a problem with our argument or identifying a problem with the trial court's decision. I think the trial court was in error by trying to allocate between Launderville and Lowmeister. The farthest that the trial court's decision should have gone would be to find them jointly and severally liable for damages to the fund. I see. I see. But that doesn't help your client a lot, because that moves him up from That's correct, Your Honor. But if that's the right answer, that's the right answer. I get you. Okay. But the other part that I think I've got a problem with that, I think that is the right answer. Yeah. The other thing that we need to look at, though, is that throughout the entire decision of the trial court, the trial court found that these plaintiffs did not bring this action on behalf of the plan. They brought it as individuals. The only basis on which the trial court found that the plan had been damaged was on her own motion after the plaintiff's evidence had come in. In other words, she said specifically that they had not brought their claims on behalf of the plan. Why is that a problem? Well, it was not part of the plaintiff's case. It never has been part of the plaintiff's case. They now claim it based on a trial court conclusion that says, well, even though they didn't prove that they didn't establish they were bringing this action on behalf of the plan, I'm going to assume as the trial judge that the plan is a plaintiff in this case because justice needs the plan as a plaintiff in this case. And I don't see that there's anything in the case that justifies the trial court's decision on that basis. The trial court specifically said that even though I'm not going to treat plaintiff's failure to prove its claims on behalf of the plan or failure to assert its claims on behalf of the plan, I'm going to say that if I did that, it would violate the premises of ERISA. Well, that's not a cause of action. That's just a judge's conclusion without evidence in the case to support it. The other point, though, I'd like to make is that the whole construct of the court's decision to allow plan participants to come back in after all these years and assert claims based on an affidavit that would have any binding effect on any of the parties here to me is erroneous. Those claims would require a trial on their own. And the court never provided for that. It simply said, if the claimants, if the plan participants file an affidavit with the referee or the administrator that was to be appointed, then that would be conclusive of their right to claim. I don't think the system works that way. I think we would have the same rights that any party to the suit would have to call them into court, cross-examine them, and determine the legitimacy of their claims. But that wasn't provided for in the trial below. Thank you. We'll hear rebuttal. Unmute myself. I'll start, Your Honor, with one of the points about how the claims were presented by plaintiffs on behalf of the plan. The court initially said in its findings that, and I don't know where this came from, but the court in its first set of findings questioned whether plaintiffs had pled their claims on behalf of the plan or for recovery to the plan. Plaintiffs then follow that with a supplemental memorandum, which is in their record, it's in the deferred appendix, that provides a bulleted list of all the places in their pleadings, in their summary judgment motion, in their responses to other motion practice, in their pre- and post-trial memo where they're repeatedly saying that is exactly what they're doing. They cite the statute. They cite exactly the relief they're seeking under the statute as repayment to the plan. There's nothing in ERISA, the language of 29 U.S.C. section 1132 does not say that a plaintiff who's a participant has to bring the action in the name of the plan. It doesn't have to be, it doesn't have to be styled that way in the form of the caption. And there was never any suggestion that it did. That's explicitly what the plaintiffs over and over again said they were asking. The court does appear to have said at trial that the plaintiffs were not making claims in a representative capacity, but were seeking individual relief. Was the district court just wrong about that? Yes. And that's what the subject of the post-trial memo was. And the court in its opinion and order on post-trial issues, which was the follow-up order after that supplemental briefing, I think basically conceded without saying that that's exactly what plaintiffs were seeking. Because the court then said, yes, I'm going to go ahead and award relief in that form. And like I say, the plaintiffs gave, they gave a laundry list of all the places where they had specifically pled and argued over and after. And we'll find that in the supplemental memo that was submitted after the trial in response to that very statement of Judge Rice in the, during the trial in effect and in the first opinion? That's correct. It was in direct response to that. That's page A399 of the deferred appendix is where that bulleted list start. And so. 399, thank you. Got it. And I will contrast that with what my colleague said about pleading the statute of limitations, because I can also tell the court exactly what the defendant's amended answer says about statute of limitations. There's a list of affirmative defenses and paragraph 133 says statute of limitations, period. That's it. There is no citation to any statute at all. And there was not an argument that the six-year statute of repose applied. There also was never an argument about what the last action in breach of fiduciary duties was. It's not the first action in breach of the fiduciary duties under that statute. It's the last action. And the trial a fair opportunity to actually respond to this because it wasn't raised. The trial record already shows that beyond 2004 into 2007, there was still money being pulled out of Mission Management and Trust from that fund until we don't know when. So there was no evidence that the last action in breach was outside the six-year limitations period. And then just one last quick point, if I may, I have to, I think, point out that my colleague suggested that all these plaintiffs were at a meeting as employees back in 2004. Two of the plaintiffs never were employees. They were children of an employee who died in 2004. There's no way they got noticed at a meeting. There's no way that could be inferred. Certainly not a factual finding that the district court would have to make in analyzing the statute of limitations. Thank you. Thank you both. We will take the matter under advisement. Thank you.